UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT CHASE MATHESON,<br><br>    Plaintiff,<br><br>v.<br><br>EDDIE FARRIS et al.,<br><br>    Defendants. | Case No. 2:22-cv-00059<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Pro se Plaintiff Robert Chase Matheson brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 alleging that Defendant Putnam County Sheriff Eddie Farris and unnamed Doe defendants violated his First Amendment rights when they blocked Matheson's access to and ability to comment on certain social media accounts. (Doc. No. 1.) The defendants have filed a motion to dismiss Matheson's claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (Doc. No. 7.) Matheson has responded in opposition (Doc. No. 11), and the defendants have replied (Doc. No. 12).

For the reasons that follow, the Magistrate Judge will recommend that the defendants' motion to dismiss be denied.

---

[1] The motion to dismiss is brought by "Eddie Farris (and any Does 1-100)." (Doc. No. 7.) Because the Doe Defendants remain unnamed, the Court's analysis will focus on Farris's arguments.

I.  Background

   A.  Factual Background[2]

Matheson states that he is "a journalist" who "operates . . . verified" Twitter, Facebook, and Instagram social media accounts under the identifying handles of "@realpatriotpunk," "@rcmatheson," and "@patriotpunknetwork," respectively. (Doc. No. 1, PageID# 4–5.) Matheson alleges that Farris "operate[s] and/or oversees the operation of" verified Twitter, Facebook, and Instagram accounts, all under the identifying handle "@putnamsheriffTN." (*Id.* at PageID# 5.) Matheson states that these accounts are "identified on the Putnam County TN Sheriff's Department's website as the official [social media accounts] for the department." (*Id.* at PageID# 6.) Matheson states that he has been blocked by Farris from the accounts "because he was critical of [Farris] and/or his policies." (*Id.*) Because he has been blocked from the accounts, Matheson cannot view posts, reply to posts, view comments to the posts, react to posts, tag the accounts in his own posts, or otherwise interact with the accounts. (Doc. No. 1.)

Matheson alleges that Farris uses these accounts "in his official capacity to post information regarding his official role as Sheriff of Putnam County, TN." (*Id.*) To support this allegation, Matheson cites examples of posts on the accounts "notifying the public of a press release regarding [arrests]"; "notifying the public that human remains . . . had been discovered"; "notifying the public that [a] missing child had been found safely . . . an update to the original posts alerting the public to be on the look out for the endangered child"; and "alerting the public to dangerous road conditions." (*Id.* at PageID#7, 9.) Matheson also states that the accounts list the Putnam County Sheriff's Department (PCSD) telephone number, physical address, and website as

---

[2]  The facts in this Report and Recommendation are taken from Matheson's complaint (Doc. No. 1) and are presumed to be true for purposes of resolving the defendants' motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)

their contact information. (Doc. No. 1.) The Twitter account's profile picture is the PCSD badge. (*Id.*)

Matheson alleges that, "[d]ue to the manner in which [Farris] uses [the accounts], the accounts have become an important channel for news about [Farris's] official government role as Sheriff of Putnam County, TN as well as the primary social media pages for the department in general. Therefore, those that are blocked from the account," including Matheson, "are impeded in their ability to receive and learn about information that is shared through these accounts." (*Id.* at PageID# 10.) Matheson also alleges that "[t]he comment thread associated with tweets or posts from [the accounts] are important forums for public input, comment and discussion about official policies connected to [Farris's] government role." (*Id.*)

Matheson alleges that, on March 23, 2022, he "became aware of a 'ban' list banning individuals' physical entry to the [PCSD]" and asked questions about the list on Farris's Facebook page. (*Id.* at PageID# 11.) Matheson states that, "[b]etween March 22, 2022 and March 24, 2022 several individuals who disagreed with the public statements made by the Putnam County Sheriff's Department allegedly had their comments deleted on [Farris's] Facebook post." (*Id.*) When Matheson learned about this, he "posted a comment asking 'Why are comments turned off on some posts and not others?'" and "ma[de] it publicly known that [Farris] was deleting comments and blocking other citizens." (*Id.*) Matheson "repeated this process in a respectful manner on Instagram and Twitter." (*Id.* at PageID# 12.) Matheson discovered he was blocked from Farris's Facebook account on March 25, 2022. (Doc. No. 1.) He discovered that he had been blocked from Farris's Twitter and Instagram accounts on March 29, 2022. (*Id.*)

Matheson alleges that "[t]his viewpoint-based blocking by [Farris] violates [Matheson's] individual First Amendment rights. [Matheson] has been subjected to an unconstitutional

restriction of [his] right to access statements made by [Farris] that are otherwise available to the public at large, and [Matheson's] ability to participate in a traditional public forum." (*Id.* at PageID# 11.) Matheson asks the Court to enjoin Farris from blocking individuals from the accounts based on viewpoint and to award Matheson costs, expenses, and attorney fees. (*Id.*)

B. **Procedural Background**

Matheson initiated this action on December 9, 2022, by filing a complaint under 42 U.S.C. § 1983 alleging a violation of his First Amendment rights. (Doc. No. 1.) The defendants have moved to dismiss Matheson's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim on which relief can be granted under Rule 12(b)(6). (Doc. No. 7.)

The defendants argue that Matheson's claim is moot because Farris has enacted a new social media policy that prohibits all third-party comments and postings and because Farris unblocked Matheson from the social media accounts. (Doc. No. 8.) The defendants also argue that Matheson lacks standing to sue because he has not alleged a cognizable injury and that Matheson cannot state a claim against them under § 1983 because he has not adequately alleged state action.[3] (*Id.*) The defendants filed a sworn declaration from Farris in which Farris explains his use of social media, states that he has "learned how to stop these comments and third-party posts, that they have been blocked for all users, and [that he does] not intend to resume the practice of allowing any

---

[3] In the defendants' motion to dismiss, they state that Farris is also entitled to qualified immunity. (Doc. No. 7.) However, the defendants do not mention qualified immunity in their memorandum of law or in any way explain why they are entitled to dismissal on this basis. (Doc. No. 8.) The Court will not consider arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation . . . ." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).

comments or third-party posts." (Doc. No. 9, PageID# 113.) Farris states that he has unblocked Matheson's accounts and that he "will not re-block him." (*Id.* at PageID# 114.)

Matheson responded in opposition, arguing that his claim is not moot because Farris may revert to his former practices and because Farris did not unblock him on Instagram or Twitter. (Doc. No. 11.) Matheson further argues that Farris blocking him on social media is a cognizable injury adequate to create standing and that he has properly alleged that Farris's conduct consitutes state action for purposes of § 1983. (*Id.*) Matheson attached his own sworn declaration stating that his access to Farris's Twitter and Instagram pages has not been restored. (*Id.*) Matheson also responds to Farris's statements about his social media usage and provides screenshot exhibits. (*Id.*)

The defendants replied, reiterating their original arguments and stating in support of their mootness argument that Matheson has indeed been unblocked from all of the subject accounts. (Doc. No. 12.) Farris attached a second sworn declaration in which he states that Matheson is unblocked from Instagram and Twitter. (Doc. No. 13.) The declaration includes exhibits, including a screenshot of a social media post by Matheson stating "[f]inally, after having to submit proof I was in fact, not unblocked, [PCSD] has unblocked me from their Instagram and Twitter pages." (*Id.* at PageID# 156.)

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the

United States," and several other categories of cases not at issue here.[4] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually

---

[4] For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'"

*Gardner v. United States*, 443 Fed. App'x 70, 73 (6th Cir. 2011) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "'so long as [the materials] are referred to in the complaint and are central to the claims contained therein[.]'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

Because Matheson appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. Federal Rule of Civil Procedure 12(b)(1)

Farris and Matheson ask the Court to consider materials outside the pleadings to determine the facts relevant to jurisdiction. Farris thus makes a factual challenge to jurisdiction under

Rule 12(b)(1), and the Court may consider the parties' sworn statements and other documents provided with their briefing.[5] *Enriquez-Perdomo*, 54 F.4th at 861.

### 1. Mootness

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to actual cases and controversies. [A federal court] has no power to adjudicate disputes which are moot." *McPherson v. Mich. High. Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (internal quotation omitted). Generally, "a defendant's voluntary cessation of a challenged practice" does not render a case moot because, "[i]f it did[,] . . . courts would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation omitted). "A defendant's voluntary conduct only moots a case if 'subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur'" and "if 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 404 F. Supp. 2d 1015, 1018 (M.D. Tenn. 2005) (first quoting *Friends of the Earth*, 528 U.S. at 189, then quoting *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir.2003)). A party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189.

The Sixth Circuit has held that a government official's claim that he voluntarily ceased allegedly wrongful conduct are viewed "with more solicitude" than similar claims by private parties. *Ammex*, 351 F.3d at 705. However, the Sixth Circuit has also explained that, while "all

---

[5] After the parties' concluded their briefing, the Court received letters and affidavits from non-parties Robert McDaniel and James Blankenship describing their own interaction with Farris. (Doc. Nos. 14–16.) There is no indication that Matheson intended these filings to be considered part of his response in opposition to the motion to dismiss. The Court therefore does not consider them in its resolution of the motion.

governmental action receives some solicitude, not all action enjoys the same degree of solicitude." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). Determining the level of solicitude and whether the ceased government action "could not reasonably be expected to recur . . . takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Id.* A change of practices enacted by legislative process "will presumptively moot the case unless there are clear contraindications that the change is not genuine." *Id.* The level of solicitude afforded a change in policy by regulation is "based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions." *Id.* "If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

Farris argues that his changes in the way he operates the social media accounts were "legislative-like" and should receive the highest level of solicitude. Farris relies on two Sixth Circuit decisions applying the *Speech First* framework to changes in media policies made by government actors. In *Thomas v. City of Memphis, Tennessee*, the Sixth Circuit found that the City of Memphis's change in media policy was "legislative-like" because the City "offered sworn testimony from its Chief Legal Officer stating that the City was *required* to obtain formal written approval of the new policy from two high-ranking City officers," thus demonstrating that a high-level approval process was mandatory. 996 F.3d 318, 326 (6th Cir. 2021). Similarly, in *Hanrahan v. Mohr*, the Sixth Circuit afforded solicitude to a prison's change in media policies where "[t]he new policies were formally promulgated and approved by the [Ohio Department of Rehabilitation and Correction (ODRC)] director after a lengthy internal process. And there is no indication that

ODRC will return to its previous policies, and the defendants have represented that the new policies will remain in place." 905 F.3d 947, 961 (6th Cir. 2018).

In contrast, Farris states by declaration that "[he has] now learned, technologically, how to block all comments and third-party posts [on the accounts], and [has] implemented that change." (Doc. No. 9, PageID# 112.) It appears from Farris's statement that "the discretion to effect the change lies" entirely with "one . . . individual"—Farris—and that "there are no formal processes required to effect the change . . . ." *Speech First*, 939 F.3d at 768. Farris thus must demonstrate "significantly more than the bare solicitude" afforded government actors "to show that the voluntary cessation moots the claim." *Id.* Farris must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189.

A government official's declaration is afforded significant weight in determining whether a wrongful practice is likely to recur. *See Thomas*, 996 F.3d at 326 (noting significance of government official signing declaration under penalty of perjury stating that challenged policy would not resume). Farris states by declaration that he has "successfully implemented technological strategies to prevent all comments or third-party posts on these social media pages" and that he "do[es] not intend (regardless of the outcome of this lawsuit) to re-enable comments or third-party posts on my pages." (Doc. No. 9, PageID# 112.) Farris also states that he has unblocked Matheson on the accounts and will not block him again. (Doc. No. 9.) Farris confirms that "the technological block [to prevent comments on his accounts] has proven successful, and there have been no comments posted publicly on my page which could be subject to deletion, regardless of comment." (Doc. No. 13, PageID# 154.)

But Farris's declarations address only a change in his practice of allowing third-party comments and posts on his social media accounts and do not address any change in policy regarding blocking individual accounts; Farris only states that he has unblocked Matheson and will not block Matheson in the future.[6] This suggests that the modifications Farris has implemented are directed at the events underlying this action and not a wholesale policy change.

The timing of when Farris implemented the modifications—after the filing of this case—also "raises suspicions that its cessation is not genuine" and, "[i]f anything, . . . increases [Farris's] burden to prove that [the] change is genuine." *Speech First*, 939 F.3d at 769. To address the timing of his change in practices, Farris states that he "had actually tried several changes to settings (long before the lawsuit) to try and prevent comments and third-party posts, but without success" and that he "did not think it was possible to prevent them or remove them as a whole." (Doc. No. 9, PageID# 111.) Farris states that "[t]his is not a litigation tactic, but I simply did not know how to do this before the litigation." (*Id.*)

Finally, whether a party "continues to defend" the challenged practices after cessation is "important to the mootness inquiry." *Speech First*, 939 F.3d at 770 (citing *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). In his second declaration, Farris

---

[6] When Farris unblocked Matheson from his Twitter and Instagram accounts appears to be in dispute. Matheson submitted his own sworn declaration in which he states that, although his access to Farris's Facebook page was restored, he remained blocked on Farris's Instagram and Twitter accounts "to this day." (Doc. No. 11, PageID# 125.) Farris filed a second declaration with his reply brief stating that, "[j]ust a few minutes after filing the Response . . . Matheson made a post on Facebook, **confirming that he is now unblocked on both Twitter and Instagram** . . . ." (Doc. No. 13, PageID# 153.) Thus, Farris states, "**Matheson admits now that he is able to access all three social media platforms and is not blocked from any account.**" (*Id.*) Farris attached a screen shot of Matheson's post, which was made approximately one hour after Matheson filed his response brief and states: "Finally, after having to submit proof I was, in fact, not unblocked, Putnam County Sheriff's Office has unblocked me from their Instagram and Twitter pages." (Doc. No. 13, PageID# 156.)

describes Matheson as "a proud attention-seeker," comments on Matheson's "mohawk [hairstyle] emblazoned with" a political slur, and cites a radio interview in which Matheson discussed his "business model" "'on a limited budget . . . to use the public forums that [he is] able to attend'" and to "comment on the [social media] pages of others with more followers." (Doc. No. 13, PageID# 154.) Farris proposes that Matheson's "statements suggest that the real purpose is not the free expression of his views but simply to grow his own follower base" and that Matheson "has made [this] lawsuit itself part of that effort to draw attention to himself . . . ." (*Id.*) Farris's statements create a plausible inference that Farris maintains his belief that blocking Matheson from his social media accounts was warranted.

Taking these considerations together, Farris has not met his significant burden at this stage to "show that [his] voluntary cessation makes it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth*, 528 U.S. at 189. Matheson's claim challenging Farris's conduct is therefore not moot.

    **2.    Standing**

A party seeking to invoke the court's jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish standing, a plaintiff must show: (1) that he has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61). When a plaintiff seeks injunctive relief, the plaintiff must demonstrate that there is a non-speculative imminent threat of ongoing or repeated injury to establish that there is a redressable injury-in-fact. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Fieger v. Mich. Supreme Court*, 553 F.3d

955, 966 (6th Cir. 2009). "Redressability . . . requires 'that prospective relief will remove the harm,' and the plaintiff must show 'that he personally would benefit in a tangible way from the court's intervention.'" *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 670 (6th Cir. 2007) (quoting *Warth*, 422 U.S. at 505).

Other courts have consistently found that a government official's blocking an individual from government social media pages or deleting an individual's comments constitutes a cognizable injury for standing purposes. *See, e.g.*, *Biedermann v. Ehrhart*, No. 1:20-cv-01388, 2022 WL 769215, at *3–4 (N.D. Ga. Mar. 14, 2022) (finding that plaintiff's being blocked from state representative's page met the injury-in-fact requirement); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 683 (N.D.W. Va. 2019) (finding that plaintiff had standing when public official deleted his Facebook comment and then blocked him); *cf. Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 172 (6th Cir. 2022) (finding that that the removal of a post from social media "may well qualify as a valid Article III injury"). Courts have also found that plaintiffs who were blocked and then unblocked on social media by government officials during the course of litigation have standing to pursue injunctive relief because a threat remained of being blocked in the future. *See, e.g.*, *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019) (holding that government official blocking and unblocking plaintiff showed threat of future enforcement adequate to satisfy standing), *as amended* (Jan. 9, 2019); *Garnier v. O'Connor-Ratcliff*, 513 F. Supp. 3d 1229, 1245 (S.D. Cal. 2021) (finding that plaintiff had standing because, although plaintiff had been unblocked from social media before trial, it was not clear that defendant would not block plaintiff again in the future), *aff'd*, 41 F.4th 1158 (9th Cir. 2022) *cert. granted*, 143 S. Ct. 1779 (2023).

Matheson has adequately alleged an injury in fact and the threat of future harm sufficient to create standing for his claims.

### B. Federal Rule of Civil Procedure 12(b)(6)

Section 1983 provides a civil cause of action to any person deprived of federal rights by a person acting under color of state law. 42 U.S.C. § 1983. "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722 (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). To satisfy the first element, commonly known as the "state action" requirement, a plaintiff must allege facts sufficient to show that a defendant's actions are "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). It "draws a line between actions taken in an official capacity and those taken in a personal one." *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022). Farris argues that Matheson has not alleged facts to show that Farris acted under color of law.

In an action arising out of the Port Huron, Michigan, City Manager's use of Facebook, the Sixth Circuit applied the "state-official test" to determine "whether a public official was acting in his state capacity" for purposes of Section 1983. *Lindke*, 37 F.4th at 1202. Under this test, "social-media activity may be state action when it (1) is part of an officeholder's 'actual or apparent dut[ies],' or (2) couldn't happen in the same way 'without the authority of [the] office.'" *Id.* at 1203 (quoting *Waters v. City of Morristown, Tennessee*, 242 F.3d 353, 359 (6th Cir. 2001)). The Sixth Circuit provided "a few factors that should guide the court's consideration of the state-official test: (1) whether any 'state law, ordinance, or regulation compelled' the defendant official to maintain the page at issue; (2) whether maintaining the page is 'designated by law as one of the actual of apparent duties of his office'; (3) whether 'government funds' were used in the maintenance of the page; (4) whether 'government employees' were used to maintain the page; and (5) whether the page 'belong[ed] to the office'—that is, whether the page would pass hands to the next officeholder or be retained by the defendant upon leaving office." *Fox v. Faison*, No. 3:22-

cv-00691, 2023 WL 2763130, at *8 (M.D. Tenn. Apr. 3, 2023) (quoting *Lindke*, 37 F.4th at 1203–04. By identifying these as the relevant factors in its analysis, the Sixth Circuit expressly "part[ed] ways with other circuits' approach to state action in this novel circumstance." *Lindke*, 37 F.4th at 1206. "Instead of examining a page's appearance or purpose"—hallmarks like the "use of a city address, email and website" on the page, or a photograph of the official wearing his uniform—the Sixth Circuit "focus[es] on the actor's official duties and use of government resources or state employees." *Id.*

Construing the complaint in the light most favorable to Matheson, he has adequately alleged "'that [the] social-media activity at issue' is '(1) is part of an officeholder's "actual or apparent dut[ies]" or (2) [could not] happen in the same way "without the authority of [the] office."'" *Fox*, 2023 WL 2763130, at *7 (quoting *Lindke*, 37 F.4th at 1203). Matheson alleges that Farris uses the accounts "as a source of information about what is happening in the Putnam County Sheriffs Office, about what he is doing in his official capacity as Sheriff of Putnam County, TN and to provide official information to the public concerning official matters of the office" which include "updates on things such as risks to public safety." (Doc. No. 1, PageID# 2, 3.) Matheson identifies numerous posts on the accounts "that could be characterized as governmental in character," *Fox*, 2023 WL 2763130, at *10, or "actual or apparent dut[ies] of [Farris's] office," *Lindke*, 37 F.4th at 1203, including notifying the public of road closures, driving conditions in extreme weather, law enforcement operations and arrests, and missing children; other posts promote press releases from the PCSD. (Doc. No. 1.) Matheson alleges that posts of this nature demonstrate that Farris uses the accounts to "disseminate information and receive public comment on issues stemming directly from [Farris's] official role as Sheriff of Putnam County, TN." (*Id.* at PageID# 12.) Matheson also alleges that the handle identifying each of the three accounts is

"@putnamsheriffTN" and that the accounts are "identified on the Putnam County TN Sheriff's Department's website as the official [social media accounts] for the department." (*Id.* at PageID# 6, 10.) These allegations support an inference that the pages belong to the office, not Farris individually. *Lindke*, 37 F.4th at 1203–04.

"The approach mandated by *Lindke* is highly context-dependent and plainly leaves open the possibility that a Facebook page [or other social media account] might, through the details of its actual use, come to function as a venue for engaging in state action." *Fox*, 2023 WL 2763130, at *9. Matheson has plausibly alleged facts that, in "[t]he relatively open-ended [context] of the *Lindke* analysis, leave[] room for the possibility that [Farris's use of the accounts] amounted to the use of the page[s] for governmental purposes." *Id*. at *10. Matheson has thus sufficiently alleged that Farris was acting under color of law when he blocked Matheson from viewing or commenting on the subject social media accounts.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion to dismiss (Doc. No. 7) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of August, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge