UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| ROBERT CHASE MATHESON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:22-cv-00059 |
| EDDIE FARRIS, *et al.*, | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

In this First Amendment action seeking injunctive and declaratory relief, Robert Chase Matheson, proceeding *pro se*, contends that Sheriff Eddie Farris engaged in viewpoint discrimination by blocking his access to certain media platforms. In response, Farris filed a Motion to Dismiss (Doc. No. 7) arguing that Matheson lacked standing, and his case was moot because he now has access to all three platforms. Magistrate Judge Alistair Newbern has issued a Report and Recommendation ("R&R") (Doc. No. 17) recommending that the Motion to Dismiss be denied.

Even though the R&R deals with a *pro se* pleading in the context of a motion to dismiss, and even though the R&R is thorough and well-reasoned, Farris has filed an Objection to it. The Objection runs almost 25 pages, but the underlying theme throughout is the same – Magistrate Judge Newbern failed to give due deference to the Declarations filed by Farris. He is, after all, the Sheriff of Putnam County, Tennessee and its "highest ranking law enforcement official[.]" (Doc. No. 19 at 7).

In his initial Declaration, Farris states that he created personal Instagram, Twitter, and Facebook pages "to promote the good work that [he] ha[s] done, and to highlight the keeping of campaign promises and success in the role for which [he] was elected[.]" (Doc. No. 9 at 2). In

response to Matheson's assertion that he and others who do not share the Sheriff's viewpoint have been blocked from accessing those social media platforms, Farris explains that he is not tech-savvy. (Id. at 3). Farris originally thought that it was impossible to prevent all comments and third-party posts, so he allowed some posts. He was "pleased" to learn, however, that he (1) can prevent all comments and third-party posts; (2) undertook to prohibit them; and (3) does "not intend to resume the practice of allowing any comments or third-party posts." (Id. at 4). Although Farris' knowledge purportedly came after this lawsuit was filed, he insists it is something he has wanted to do for a long time and that it had nothing to do with Plaintiff filing suit. (Id.) Further, after hearing Matheson on the radio talking about "limited public forums" and the blocking of one viewpoint or another, Farris unblocked the Twitter, Facebook, and Instagram accounts associated with Matheson. (Id. At 5). Farris maintains that he "will not reblock him." (Id.).

The Supreme Court "ha[s] said that . . . voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 457 (2017) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000)). It is only in "rare instances" where this standard will be met," because it is a "formidable burden" to show that the conduct is unlikely to recur, A. Philip Randolph Inst. v. Husted, 838 F.3d 699, 712 (6th Cir. 2016) (citing League of Women Voters of Ohio v. Brunner, 548 F.3d 167, 189. (6th Cir. 2010)).

"Determining whether the ceased action 'could not reasonably be expected to recur takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." Speech First, Inc. v. Schlissel, 939 F.3d 756, 768 (6th Cir.

2019). The Sixth Circuit has explained:

> "Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine. . . .
>
> On the other hand, where a change is merely regulatory, the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions.
>
> If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim."

Id. (citations omitted).

No doubt, and as Magistrate Judge Newbern recognized, a government official's "sworn . . . declaration under penalty of perjury" is entitled to significant weight. Thomas v. City of Memphis, 996 F.3d 318, 326 (6th Cir. 2021). However, this does not make the declaration sacred or not subject to challenge. Understandably, several things from the record gave Magistrate Newbern pause, as they do this Court.

For one, the timing of Farris' change "raises suspicions that [the] cessation is not genuine. . . . If anything, this increases [his] burden to prove that [the] change is genuine." Speech First, Inc., 939 F.3d at 769. While Farris offers an explanation for how he just happened to learn how to block comments and posts after suit was filed, his explanation only opens the door for further inquiry. And, his response to Matheson's own Declaration blows those doors wide open.

In response to Farris' Motion to Dismiss, Matheson filed a Declaration stating that, while he has had access to the Facebook page of the Putnam County Sheriff's Office, the same was not true with regard to Farris' Twitter and Instagram pages. (Doc. No. 11 at 2). This prompted Farris to file

3

a Supplemental Declaration in which he states that, shortly after Matheson filed his response, Farris posted on his Facebook page that Matheson was unblocked on both Twitter and Instagram. Farris insists that he had unblocked all of the accounts belonging to Matheson before the Motion to Dismiss was filed and, if there was "some technological delay," it was not his doing. (Doc. No. 13 at 1). Thus, Farris does not believe Matheson statement to be accurate. (Id.). Farris also opines that because "the fix was successful, . . . the issues presented by Mr. Matheson's complaint are moot" and "there is no live controversy because Mr. Matheson has obtained all the relief he has requested." (Id. at 2, 3)

Then, seemingly apropos of nothing, Farris goes on to observe that Matheson "is a proud attention–seeker" who has a "mohawk emblazoned with 'FJB' (referencing the current President)." (Id. at 2). To punctuate the point, Farris submits a screenshot of Matheson wearing said hairdo. (Id.).

Chief law enforcement officer of Putnam County or not, Farris is not in a position to offer legal opinions and conclusions. Nor is this Court in a position to credit one declaration over another, even if one of the declarants is a Tennessee County Sheriff and the other sports a mohawk. The Court reminds Farris that all litigants stand equal before the court and neither titles, political ideologies, nor appearance changes their equality in this Court.

Finally, Farris faults Magistrate Judge Newbern for relying on a string of cases that "consistently found that a government official's blocking an individual from government social media pages or deleting an individual's comments constitutes a cognizable injury for standing purposes," and others cases holding that "plaintiffs who were blocked and then unblocked on social media by government officials during the course of litigation have standing to pursue injunctive

4

relief because a threat remained of being blocked in the future." (Doc. No. 14) (collecting cases). All of those cases are inapposite according to Farris because he "has committed under penalty of perjury not to block Plaintiff from accessing his social media pages, and any threat of being blocked is remote and speculative." (Doc. No. 19 at 22). From the record, and after *de novo* review, the Court agrees with Magistrate Judge Newbern that "Farris has not met his significant burden at this stage to show that [his] voluntary cessation makes it absolutely clear that the allegedly wrongful conduct could not reasonably be expected to recur." (Doc. No. 17 at 13) (internal citation omitted).

Accordingly, the Court rules as follows:

(1) Magistrate Judge Newbern's Report and Recommendation (Doc. No. 17) is hereby **ACCEPTED** and **APPROVED**; and

(2) Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure is **DENIED**.

This case is returned to Magistrate Judge Newbern for further pretrial case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE